NOT FOR PUBLICATION                                              (Docket Nos. 31, 37, 40)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DEBORAH ANN WHITTINGHAM, | : |
| Plaintiff, | : Civil No. 06-3016 (RBK) |
| v. | : |
|  | : **OPINION** |
| MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC., et al. | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on three motions, one by Defendant Mortgage Electronic Registration Services, Inc. ("MERS") and Defendant HSBC Mortgage Services, Inc. ("HSBC"), and two by Defendant Zucker, Goldberg & Ackerman, LLC ("Zucker") for dismissal or summary judgment on the claims of Plaintiff Deborah Ann Whittingham ("Plaintiff"). For the reasons set forth below, the Court grants the motions in their entirety.

**I.    BACKGROUND**

The facts in this case have been previously set forth, although the prior Opinion in this case recited the facts solely as alleged in Plaintiff's Complaint. <u>Whittingham v. Mortg. Elec. Registration Servs., Inc.</u>, Civ. No. 06-3016, 2007 WL 1456196, *1 (D.N.J. May 15, 2007). The

1

facts are now set forth as developed during discovery.

Plaintiff owns a residential property located at 112 Fernshire Court, Deptford, New Jersey. Defendant MERS held a mortgage on the property, which was serviced by HSBC Mortgage Services ("HSBC"). On June 30, 2005, HSBC and MERS initiated foreclosure proceedings against Plaintiff, in which Defendant Zucker represented MERS and HSBC. Rather than go through with the foreclosure, Plaintiff requested a pay-off amount from HSBC and MERS, to which HSBC responded on June 27, 2005 with a letter sent to Plaintiff's counsel. The letter indicated that Plaintiff's pay-off balance was $17,997.86. (St. Clair-Hougham Decl. Ex. F.) This total included an unpaid principal balance of $14,411.77; interest of $1,352.59; and other unpaid fees of $2,193.50. The other unpaid fees sum included $910.00 in attorneys' fees; $1,174.00 in costs of suit; $100 for a broker price opinion; and $9.50 for a property inspection fee. The letter also noted that if payment were made after July 1, 2005, an additional $5.4686 would be required for each additional day. Plaintiff remitted $18,052.55 to pay off the loan; this amount was received by HSBC on July 9, 2005.

Plaintiff paid more than was required. On July 27, 2005, HSBC sent Plaintiff a refund check for $2,004.44, which she cashed or deposited on August 2, 2005. (St. Clair-Hougham Decl. Ex. J.) According to Defendants, this refund was calculated by starting with the total amount Plaintiff paid ($18,052.55) and subtracting the amounts to be retained by HSBC: broker price opinions (two at $100 each), a recording fee ($40), the principal balance ($14,411.77), and the interest ($1,396.34). (St. Clair-Hougham Decl. ¶ 34.) Plaintiff was refunded the remaining $2,004.44.

On July 7, 2006, Plaintiff filed a complaint in the United States District Court for the

District of New Jersey, alleging that MERS, HSBC, and Zucker "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law." The Court ruled in May 2007 on motions to dismiss filed by all three defendants and dismissed some of Plaintiff's claims. The claims remaining against Defendants MERS and HSBC allege breach of contract, intentional misrepresentation, negligence, breach of the duty of good faith and fair dealing, unjust enrichment, and violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1-20 by attempting to collect amounts not permitted by law and by using unfair and unconscionable collection methods. The remaining claims against Zucker are for negligence, breach of the duty of good faith and fair dealing , unjust enrichment, and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d) <u>et seq</u>.

Defendant Zucker now brings two motions before the Court. The first is a motion to dismiss Plaintiff's state law claims for failure to provide an affidavit of merit as required by N.J.S.A. § 2A:53A-26. The second is a motion for summary judgment on the remainder of Plaintiff's claims. Defendants MERS and HSBC also seek summary judgment on all of Plaintiff's remaining claims.[1]

## II.    STANDARDS OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). A genuine issue

---

[1] Plaintiff has still not formally moved for class certification pursuant to Federal Rule of Civil Procedure 23. As with the prior Opinion, the Court addresses the instant motions as though Plaintiff is the only Plaintiff in this action, rather than a class representative.

of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence presented by the parties, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   DISCUSSION

#### A.   Zucker's Motion to Dismiss Based on N.J.S.A. § 2A:53A-26

Defendant Zucker argues that Plaintiff's claims of negligence, breach of the duty of good faith and fair dealing, and unjust enrichment are barred because Plaintiff never filed an affidavit of merit as required by New Jersey law. Plaintiff does not dispute that the statute applies in this

4

case but counters by arguing that because her claims are based on matters within common knowledge, no affidavit is required.

N.J.S.A. § 2A:53A-27, which applies in legal malpractice cases, requires a plaintiff to have an independent person licensed in the appropriate professional field provide a review of the plaintiff's claim and certify that "that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. § 2A:53A-27.  The plaintiff must provide this affidavit of merit within sixty days of the date that the defendant files an answer, and a court may not grant an extension longer than one additional sixty day period.  Id.  The requirement to file an affidavit of merit in malpractice cases is mandatory.  Failure to file an affidavit of merit results in dismissal of a complaint with prejudice, both in state court and in federal court in which jurisdiction is based on diversity of citizenship.  See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) ("Failure to provide . . . the affidavit . . . within 60 days, or 120 days if the court grants an extension for good cause, results in dismissal for "failure to state a cause of action.'") (citing N.J.S.A. § 2A:53A-28). See also Lee v. Thompson, 163 F. App'x 142, *1 (3d Cir. 2006).

In Hubbard v. Reed, 168 N.J. 387 (2001), a case in which a dentist extracted the wrong tooth, the New Jersey Supreme Court held that when a defendant's negligence is so apparent that expert testimony will not be needed at trial, the purpose of the affidavit of merit statute–to reduce frivolous lawsuits–would not be furthered by requiring an affidavit of merit.  Id. at 394-95.  The "common knowledge exception applies "where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a

5

defendant's negligence without the benefit of the specialized knowledge of experts.'" Id. at 394 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). "Put another way, in a common knowledge case an expert is no more qualified to attest to the merit of a plaintiff's claim than a non-expert." 168 N.J. at 395. See also Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 579-80 (3d Cir. 2003) (recognizing the "common knowledge" exception to the affidavit of merit requirement in federal court and holding that plaintiff was entitled to that exception where the "defendant's careless act" in not ensuring when plaintiff needed regular doses of insulin was apparent to lay person). The exception is narrow, and the Hubbard court counseled that the "wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial. In most such cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal . . . ." 168 N.J. at 396. See also Brizak v. Needle, 571 A.2d 975, 984 (N.J. Super. Ct. App. Div. 1990) (noting that "jury will rarely be able to evaluate" legal malpractice claims "without the aid of expert legal opinion").

Plaintiff is not entitled to the benefit of the common knowledge exception in this case. Plaintiff's claims of negligence, breach of the duty of good faith and fair dealing, and unjust enrichment arise from the contention that Defendant Zucker owed a duty to Plaintiff and participated in overcharging Plaintiff for legal fees HSBC incurred in the foreclosure proceedings. To resolve these issues, a jury would first be required to determine if Zucker owed any duty to Plaintiff, a non-client. Petrillo v. Bachenberg, 655 A.2d 1354, 1359-61 (N.J. 1995). This inquiry would require analysis of whether Defendant Zucker knew, or should have known,

6

that Plaintiff would rely on Zucker's representations and whether Plaintiff, particularly because she already had legal counsel, was not too remote from Zucker to be entitled to protection. Petrillo, 655 A.2d at 1359. Whether this duty exists is not "so basic that it may be determined by the court as a matter of law." Kranz v. Tiger, 914 A.2d 854, 861 (N.J. Super. Ct. App. Div. 2007). Though Plaintiff argues that the only issue is "the proper calculation of the attorney's fee pursuant to the New Jersey Court Rule 4:42-9(a)(4)," this argument misses the antecedent question of whether Zucker owed Plaintiff any duty when communicating with HSBC. The Court, in the prior Opinion, held that Plaintiff had sufficiently pled the existence of a duty to survive a motion to dismiss for failure to state a claim, but the Court did not find that such a duty existed or opine on the scope of the duty if applicable. Whittingham, 2007 WL 1456196, at *3-4. Expert legal testimony would be required to assist the jury in evaluating Zucker's professional standard of care in this situation.

Assuming a jury did find the existence of a duty, the jurors would then have to determine whether Defendant Zucker breached that duty by misrepresenting the fee owed. This determination would require analysis of New Jersey Court Rule § 4:42-9(a)(4) and the implications of the rule where the attorney is not directly seeking the fee from the mortgagee but is merely giving a fee estimate to a client. Contrary to Plaintiff's assertions, it is not common knowledge that attorneys may seek limited fees from defendants in foreclosure actions and that communicating an overcharge to a mortgage-holder client is a breach of a duty. Moreover, Plaintiff agrees that any information Zucker communicated regarding its fee was communicated first to HSBC, and then from HSBC to Plaintiff's counsel, and then from Plaintiff's counsel to Plaintiff. (Pl.'s Stmt. of Facts ¶¶ 2-3.) It is similarly not common knowledge that an attorney

7

breaches a duty of care to a third party by communicating potential misinformation through that third party's attorney.

The same reasoning applies to Plaintiff's claim for breach of the duty of good faith and fair dealing. Though this claim appears to be founded on contract principles, "the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable" to attorneys. Couri v. Gardner, 801 A.2d 1134, 1141 (N.J. 2002). Because a jury will be required to analyze whether Zucker owed Plaintiff a duty of good faith and fair dealing, the affidavit of merit requirement applies.

The unjust enrichment claim also required an affidavit of merit. Though the elements of unjust enrichment do not require a relationship or duty between the parties, VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J.1994), Plaintiff would still have to establish that Zucker received more than it was entitled, which would require evidence regarding the New Jersey Court Rules. This claim about professional duties requires an affidavit of merit.

Plaintiff was required to file an affidavit of merit, and because she did not do so within the proper time period, Counts 4, 5, and 6 against Zucker must be dismissed. Moreover, even if the Court believed that an affidavit of merit was not required in this situation, the Court's conclusions on the lack of evidence of damages (infra, Section C) discussed with respect to the motion of Defendants MERS and HSBC would apply equally to those claims against Defendant Zucker.

      **B.**      **Zucker's Motion for Summary Judgment on the FDCPA Claims**

Defendant Zucker seeks summary judgment on Plaintiff's claims under the FDCPA, arguing that the facts now establish that it is not a "debt collector" within the meaning of the

8

statute.  In the alternative, Zucker argues that Plaintiff's claims are based on the pay-off letter from HSBC and are time-barred.  In the prior Opinion, the Court held that Defendants MERS and HSBC were not debt collectors and dismissed the FDCPA counts against those defendants. Whittingham, 2007 WL 1456196, at * 7.  The Court did not have occasion at that time to rule on whether Defendant Zucker, as a law firm representing a mortgage servicing company, could be considered a debt collector under the statute.

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G).  As noted in the prior opinion, the term "debt collector" does not include a mortgage servicing company unless the mortgage was already in default at the time when the servicing began.  Dawson v. Dovenmuehle Mortg., Inc., No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002).

Plaintiff alleges that Zucker is covered under the FDCPA because it is responsible for the "inaccurate payoff letter."  The facts establish that Plaintiff's counsel sent a letter to Zucker requesting a pay-off amount.  (Pl.'s Ex. A.)  Zucker communicated to HSBC the amount of fees and costs owed.  (Pl.'s Ex. B.)  HSBC sent Plaintiff the pay-off letter.  According to a manager at Zucker, the pay-off letter was not created or sent by Zucker, and Zucker had no opportunity to control its form, content, or issuance.  (Ackerman Decl. ¶ 9.)  Plaintiff argues that because

Zucker calculated the fee, the firm was involved in the preparation and calculation of the pay-off and can be considered a debt collector.

Plaintiff cites to Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 3d 347 (D.N.J. 2006) to support her contentions. The plaintiff in Barows asserted claims under the FDCPA against a law firm representing a mortgage servicing company that had initiated foreclosure proceedings, claiming that she had been overcharged for legal fees and costs. Relying on the United States Supreme Court's decision in Heitz v. Jenkins, 514 U.S. 291 (1995), the court held:

> Defendants are debt collectors if they are lawyers who regularly try to obtain payment of consumer debts through legal proceedings. Defendants have not shown that they are not lawyers who regularly try to obtain payment of consumer debts through legal proceedings. Thus, the Court cannot conclude that Defendants are not "debt collectors." Consequently, for the purposes of deciding Defendants' motion to dismiss, and construing Plaintiff's allegations as true, Defendants are "debt collectors" under FDCPA.

Barows, 465 F. Supp. 2d at 356.

Even if the Court agreed that Zucker's actions constituted a communication from a debt collector to collect a debt in violation of the FDCPA, Plaintiff's claims are time-barred. In the prior Opinion, the Court held that the allegations in the Complaint relating to the pay-off letter were filed after the expiration of the statute of limitations and therefore untimely. In contrast, the Court found that the allegations relating to the actual payment of the debt were timely. Whittingham, 2007 WL 1456196, at *3. The evidence now shows that any involvement by Defendant Zucker occurred when the estimate was communicated to HSBC on June 24, 2005, before the creation of the pay-off letter, and Zucker did not participate in the collection of the debt after that time. Plaintiff has not challenged Zucker's assertion that the firm never received or otherwise attempted to collect any monies from her. Therefore, the only allegations against

10

Defendant Zucker arise from the information in the pay-off letter, and, as previously held by the Court, those allegations are barred by the one-year statute of limitations in the FDCPA. 15 U.S.C. § 1692k(d).

Defendant Zucker is therefore granted summary judgment on Plaintiff's FDCPA claims in Counts 1 and 10.

      C.     **MERS and HSBC's Motion for Summary Judgment**

Defendants MERS and HSBC seek summary judgment on the remaining claims against them, arguing that Plaintiff has not been able to establish damages, and damages are an essential element of all the remaining claims. The remaining claims fall into two groups: the first are claims under the Consumer Fraud Act (Counts 7 and 13), and the second are common law claims for breach of contract, intentional misrepresentation, negligence, breach of the duty of good faith and fair dealing, and unjust enrichment. MERS and HSBC argue that it is undisputed that all attorneys' fees and costs paid by Plaintiff were refunded to her less than three weeks after they were received, and as a result Plaintiff did not suffer damages. Plaintiff contends that because she paid $601.92 more than would have been permitted in attorneys' fees under New Jersey Court Rule 4:42-9(a)(4), she suffered an ascertainable loss and is entitled to treble damages under the CFA.

Plaintiff also argues that the motion of MERS and HSBC for summary judgment is premature because outstanding discovery issues remain. However, if Plaintiff believed Defendants' motions to be premature, Rule 56(f) afforded the appropriate remedy, permitting her to file an affidavit to with the Court explaining what information was required and why the missing information would be necessary to adequately oppose the motion. Fed. R. Civ. P. 56(f).

Where an affidavit indicates that the party cannot "present by affidavit facts essential to justify the party's opposition," Rule 56(f) authorizes the Court to "refuse the application for judgment" or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). Plaintiff has submitted no affadavit under Rule 56(f). Moreover, Plaintiff indicates in her brief that she accepts Defendants' statement of facts as true and offers no counter-statement, and she willingly consented to an order staying discovery because the pending motions could be resolved without further discovery efforts. (Pl.'s Opp'n at 1; Docket Entry No. 39.) Any of Plaintiff's arguments relating to discovery are without merit. The Court accepts as fact that Plaintiff did not pay any attorneys' fees. Though Plaintiff attempts to argue that the $1,174 "costs of suit" amount has not been itemized, is likely improper, and requires further investigation, she has forfeited this argument.

  A claim under the CFA may only be brought where the Plaintiff has suffered an "ascertainable loss." N.J.S.A. § 56:8-19. The New Jersey Supreme Court has interpreted this as requiring "a private plaintiff [to] produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss" that is "quantifiable or measurable." Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 792-93 (N.J. 2005). Plaintiff argues that her initial payment of the overcharge constituted an ascertainable loss under the CFA and cites to Cox v. Sears Roebuck & Co., 647 A.2d 454 (1994). In Cox, the New Jersey Supreme Court found that the plaintiff had suffered an ascertainable loss where he contracted with Defendant Sears to build a new kitchen, and Sears built a shoddy, unsafe, deficient kitchen. The court upheld the jury's determination that Cox suffered damages in the amount necessary to complete or repair the work in his kitchen. Cox, 647 A.2d at 464. Though not applicable to Sears' conduct in that case, the

12

court also noted that "an improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act." Id.

Plaintiff's loss here is not like the loss suffered by Cox. The plaintiff in Cox had paid for a faulty kitchen, which had not yet been repaired. Even if the plaintiff had not yet paid for the kitchen, he still had a faulty kitchen as a result of Sears' poor work, whereas before Sears' actions he had a fully functional kitchen. Though the Plaintiff here may have paid a sum to which Defendants were not entitled, she received a full refund of that amount. (St. Clair-Hougham Decl. ¶ 34, Ex. J.) This is more like the situation in Thiedermann, where the plaintiffs sued Mercedez-Benz for defective fuel gauges in their automobiles, all of which had been repaired under warranty. The court in that case found that the plaintiffs were inconvenienced by the defects; they ran out of fuel while they were driving, their cars stalled unexpectedly, and they needed to take their car in for repairs. However, the court held that the plaintiffs had not suffered an ascertainable loss because the problem had been repaired at no cost to the plaintiffs. Similarly, it is undisputed that Plaintiff here received a refund check for $2,004.44 and was therefore refunded any improper amounts previously paid. Like the plaintiffs in Thiedermann, Plaintiff incurred no costs. See also Glassman v. Advantage Auto. Ltd., No. L-5023-05, 2007 WL 471006, * 3 (N.J. Super. Ct. App. Div. Feb. 15, 2007) (no ascertainable loss where plaintiff received full refund for monies paid as a result of alleged fraud); Barows, 465 F. Supp. 2d at 361 (no ascertainable loss where defendant mortgage companies demanded fees in excess of amount permitted but foreclosure was resolved without plaintiff paying any fees).

Plaintiff is in the same position as before she submitted payment based on the pay-off

13

letter, and she has suffered no ascertainable loss. She cannot maintain her claim under the CFA, and Defendants MERS and HSBC will be granted summary judgment on Counts 7 and 13.

Plaintiff's claims of breach of contract, intentional misrepresentation, negligence, breach of the duty of good faith and fair dealing, and unjust enrichment must go the way of the CFA claims; because Plaintiff cannot show an ascertainable loss, she cannot show damages. Plaintiff must show some evidence on the element of damages in order to survive summary judgment on each of these claims, and she has not. Summary judgment will be granted to MERS and HSBC on Counts 2, 3, 4, 5, and 6.

## IV.   CONCLUSION

The Court grants Zucker's motion to dismiss Counts 4, 5, and 6 because Plaintiff failed to timely file an affidavit of merit. Zucker's motion for summary judgment on Counts 1 and 10 is also granted. The motion for summary judgment of MERS and HSBC on Counts 3, 4, 5, 6, 7, and 13 is granted because Plaintiff has failed to show an ascertainable loss or damages. As the Court has granted Defendants' motions in their entirety, none of Plaintiff's claims remain. An accompanying order will issue today.


Dated:   6-23-08                                    /s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge